GOOCH *v.* STATE. ·

Opinion delivered December 1, 1894.

1. *Larceny—Special ownership.*

Where a bailee of a horse wrongfully sold it to an innocent purchaser, and then stole it from him, an indictment for the larceny may allege the ownership of the animal stolen to be in such purchaser.

2. *Larceny—Felonious intent.*

Where a bailee of a horse wrongfully sold it, and subsequently took it secretly from the possession of the purchaser, intending in good faith to restore it to its true owner, he is not guilty of larceny, for there was not only no intention to deprive the true owner of his property, but an intention to restore it to him.

Appeal from Crawford Circuit Court.

JEPHTHA H. EVANS, Judge.

STATEMENT BY THE COURT.

The appellant, Charles Gooch, was indicted by the grand jury of Franklin county for the crime of larceny, The indictment alleged that he stole a mare, the property of H. C. McElroy.   The evidence tended to show that Gooch hired the mare from one Hollenbeck to ride to his uncle's, who lived near Oak Bower. After leaving his uncle's, he rode the mare to Ozark in Franklin county.   While in Ozark, he traded the mare he had hired to one McElroy for a horse owned by McElroy, representing to McElroy that the mare he traded was his property.   He then sold the horse obtained from McElroy.   McElroy afterwards became suspicious about the transaction, and, thinking that the defendant intended to leave on the train that night, told him that he must remain at his (McElroy's) house until morning, so that he could investigate the matter.   Defendant at first declined to do this, but, upon being told that if he

did not consent to stay he would be put in jail, he consented.    McElroy gave him a room with bed at his house; but when he awoke next morning, about four o'clock, it was to find that the defendant and mare were both gone.    The next day defendant was captured about ten miles west of Ozark.    On the trial the defendant testified in his own behalf, and, in explanation of his conduct, said that, after he had hired the mare from Hollenbeck, and before he got to his uncle's, he had met a man who had invited him to drink from a bottle of diluted alcohol; that he drank, and became very drunk; that he got to his uncle's late that night; that next morning he had a high fever, and started to return to Jenny Lind, at which place he had hired the mare.    On the journey he became unconscious, and did not know anything till that afternoon when he found himself at Webb City; that he crossed the river to Ozark where he began to make offers to trade or sell Hollenbeck's mare; did not know why he did it; that he traded the mare to McElroy; that, soon after he traded her, he discovered he was getting into trouble, and when McElroy told him he had to stay all night with him, he decided to get up in the night, and take the mare secretly from the stable, and return her to Hollenbeck, from whom he had hired her, as quick as possible, and get his father to come over to Ozark, and pay McElroy for his horse, and straighten up whatever wrong he (defendant) had done; that this was the only intention he had at the time of taking the mare from McElroy.    Defendant was nineteen years of age, and witnesses who knew him testified that up to the time of this crime his character was good. Defendant was convicted, and appealed.

*Oscar L. Miles* for appellant.

*James. P. Clarke*, Attorney General, and *Chas. T. Coleman* for appellee.

RIDDICK, J., (after stating the facts). It is urged as grounds for reversal of the judgment of conviction, first, that the court erred in giving to the jury an instruction touching the law of insanity. It is contended that the defendant did not set up such defense, and that the instruction was abstract and prejudicial. Where there is any evidence tending to show insanity or unsoundness of mind on the part of the defendant at the time the crime was committed, the court may, of its own motion, give an instruction covering the law on that point. And if an instruction is given without any evidence upon which to base it, this court will not reverse when it is apparent that the defendant was not injured by such instruction. In this case we do not see that the defendant was in any way prejudiced by the instruction in question.

It is next contended that as McElroy had purchased the mare from one who had no right to sell, the indictment should have alleged the title of the property to be in the true owner, and that the proof did not sustain the allegation that the mare was the property of McElroy. We do not think this position tenable. The authorities cited by counsel for the State fully convince us to the contrary. Goods stolen from a thief who had stolen them from another may be charged in the indictment to be either the property of the thief or the true owner.* 2 Bishop's New Crim. Law, sec. 789; 2 East's

*1. Special ownership in larceny sufficient.*

---

*NOTE—It is a well established principle of law that to constitute the crime of larceny the property must be feloniously taken from *the possession* of the owner. But, says Gould, J., in *Wilkins' Case,* 2 Leach, 589, "it is a rule of law, equally well known and established, that the possession of the true owner cannot be divested by a tortious taking; and therefore, if a person unlawfully take my goods, and a second person take them again from him, I may, if the goods were feloniously taken, indict such second person for the theft, and allege in the indictment that the goods are my property, because these acts of theft do not change the possession of the true owner." (Rep.)

Pleas of the Crown, 654; 1 Hale, Pleas of the Crown, 507; *Ward* v. *People*, 3 Hill (N. J.), 395; *Ward* v. *People*, 6 Hill, 144; *Commonwealth* v. *Finn*, 108 Mass. 466. As McElroy had procured the possession of the mare for a valuable consideration and in good faith, we entertain no doubt that it was sufficient to allege the title of the property in him, and that the proof was sufficient to sustain that allegation.

2. Felonious intent necessary.

The court was asked by defendant to instruct the jury as follows: "If you are satisfied from the evidence that the defendant, at the time of taking the mare described in the indictment, took her with the intention of restoring her to the man from whom he had hired her, you should acquit him. If, from all the evidence in the cause, you have a reasonable doubt as to whether the defendant, at the time of the taking of the mare, had in his mind the intent to steal her, or the intent to take and restore her to her original owner, and thus endeavor to cure whatever wrong he had committed with respect to said mare, you should give the defendant the benefit of that doubt, and acquit him." The court refused this instruction, and, over the objection of the defendant, gave the following instruction on this point: "If the defendant hired the mare from Hollenbeck's agent, and fraudulently sold and delivered her to McElroy as his own, McElroy being honest in the purchase and receipt thereof, and thereafter, becoming aware that McElroy suspected him of having stolen the mare, defendant took the mare secretly from the possession of McElroy, without McElroy's consent, with intent to deprive McElroy permanently of said mare, and restore her to Hollenbeck, and thus prevent his being punished for the wrong done Hollenbeck in regard to the mare, this would be larceny of the mare from McElroy." Exceptions were duly saved to the giving of this instruction, and the question now before us is whether it correctly states the law.

To constitute larceny the taking must be done with a felonious intent. It has been held that a person who takes muskets to prevent their being used against himself and friends does not commit larceny, there being no *lucri causa*. "A better reason for this just decision," says Mr. Bishop, "would have been that his motive was not to deprive the owner of his ownership in them." *United States* v. *Durkee*, 1 McAl. 196; 2 Bishop's New Crim. Law, sec. 847. If one in good faith takes property under a claim of title, however badly mistaken or unfounded the claim, he commits no larceny. And it is the same where the taking is on behalf of another believed to be the owner. 2 Bishop's New Crim. Law, sec. 851; *Rex* v. *Knight*, 2 East, P. C. 510.

Hollenbeck was the real owner of the mare, and if the defendant took her, intending in good faith at the time to restore her to Hollenbeck, he committed no larceny, for there was not only no intention to deprive the owner of his property, but an intent to restore it to him.

When he obtained a horse from McElroy by trading him a mare that he falsely pretended to own, but which was owned by Hollenbeck, defendant committed the crime of obtaining property by false pretenses, for which he pleaded guilty, and is now being imprisoned.

If he afterwards stole the mare of Hollenbeck from McElroy, he should also be punished for larceny, but not if his only intention in taking the mare was to restore her to Hollenbeck. We conclude that the court erred in giving the above instruction, and also in refusing the one asked by defendant. The judgment is therefore reversed, and the cause remanded for a new trial.